# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

HOLLY JARVIS,

      Plaintiff,

    v.            5:25-CV-645
                  (LEK/MJK)

FUNNY BONE COMEDY CLUB,
ROB BELCAMINO,
GERALDO ARROYO,
KEMPTON TAYLOR, and
VALENCIA (FULL NAME UNKNOWN)

      Defendants.

---

HOLLY JARVIS, Plaintiff, *pro se*

MITCHELL J. KATZ, United States Magistrate Judge

TO THE HONORABLE LAWRENCE E. KAHN, Senior United States District Judge:

## ORDER and REPORT-RECOMMENDATION

Plaintiff commenced this action on May 21, 2025, by filing a complaint. (Dkt. 1).[1] That same day, Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkt. 2). The Clerk has sent the complaint and IFP application to this Court for its review.

---

[1] This case is related to *Jarvis v. City of Syracuse Police Department, et al.,* 5:25-CV-00228 (LEK/MJK).

I.     **IFP Application**

A court may waive filing fees upon finding that a plaintiff is indigent. *See* 28 U.S.C. § 1915(a). A plaintiff seeking to proceed *in forma pauperis* must submit an affidavit stating that they are "unable to pay" filing fees "or give security therefor." *Id.* § 1915(a)(1). The plaintiff must also include a "statement of all assets" he or she possesses. *Id.* When an applicant "fails to explain how he supports himself, courts generally regard his application as incomplete and insufficient to establish an entitlement to in forma pauperis status." *Jones v. Acs/Queens Field Off.*, No. 23-CV-5742, 2024 WL 2818138, at *1 (E.D.N.Y. June 3, 2024).

Here, Plaintiff declares in her IFP "application" that she "cannot afford to pay the court fees without compromising basic living expenses." (Dkt. 2). Absent from Plaintiff's self-created affidavit is any representation of her assets or details about her monthly living expenses. Without that information, the Court cannot properly assess whether Plaintiff is entitled to *in forma pauperis* status. Accordingly, Plaintiff's IFP application is denied without prejudice and with leave to renew.

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii). Courts shall dismiss a case, at any time, if they determine that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id.*

When determining whether an action is frivolous, a court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007); *see also* 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). But courts must still determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Id.* (finding that a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

Additionally, Fed. R. Civ. P. 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

The Court will now consider Plaintiffs' complaint under the above standards.

## II.    Complaint

Plaintiff's complaint alleges the following: On November 25, 2023, Plaintiff and her son attended a show at Funny Bone Comedy Club. (Complaint ("Compl."), at ¶ 9). Plaintiff alleges that she and her son were falsely accused of misconduct by Defendants Belcamino, Arroyo, Taylor, and Valencia after Plaintiff's son allegedly "made physical contact with [Defendant Taylor]." (*Id.,* at  ¶¶ 10-11). Plaintiff alleges that Defendants "intentionally provided false statements to the Syracuse Police Department" which caused her emotional distress, humiliation, and reputational damage. (*Id.* at ¶ 16). Plaintiff was also "banned from Destiny USA properties." (*Id.).* Finally, Plaintiff alleges that Defendants "failed and refused to produce surveillance footage, falsely claiming it was unavailable." (*Id.*, at ¶ 15). Plaintiff seeks monetary damages and injunctive relief. (*Id.*, at 3).

## III.    Discussion

Plaintiff cannot establish that this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) (diversity jurisdiction) or 28 U.S.C § 1331 (federal question jurisdiction). This Court recommends that the complaint be dismissed without prejudice and with leave to amend.

### A. Subject Matter Jurisdiction

#### 1.  Diversity of Citizenship

Subject matter jurisdiction under 28 U.S.C. § 1332(a)(a) exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). Here, the complaint alleges that "Plaintiff Holy Jarvis is a citizen of Syracuse, New York." (Compl., ¶ 1). However, the complaint is devoid of any allegations

concerning the citizenship of the remaining Defendants so that the Court can determine whether complete diversity of citizenship among the parties exists. The Court therefore recommends that the complaint be dismissed without prejudice and with leave to amend.

### 2.  Federal Question Jurisdiction

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 "of all civil actions arising under the Constitution, laws, or treaties of the United States." To invoke this ground for jurisdiction, however, a complaint must "necessarily raise a federal issue" — that is, "a right or immunity created by the Constitution or laws of the United States [must be] an element, and an essential one, of the plaintiff's cause of action." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 63-64 (2d Cir. 2023) (citations omitted).

Plaintiff's attempt to invoke federal question jurisdiction by virtue of asserting a claim under 42 U.S.C § 1983 fails. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also show that the "alleged deprivation was committed by a person acting under color of state law." *Id.* "A defendant acts under color of state law when" they exercise "some right or privilege created by the State . . . or" they are "a person for whom the state is responsible, and" they are "a person who may fairly be said to be a state actor." *See Sykes v. McPhillips*, 412 F. Supp. 2d 197, 200 (N.D.N.Y. 2006) (internal citations omitted).

Here, Plaintiff does not plead any facts establishing that Defendants were acting under the color of law, are individuals who the state is responsible for, or are individuals who may fairly be called a state actor. Plaintiff's conclusory allegation that Defendants "acte[d] jointly with public officials" is insufficient to establish a

§ 1983 claim. *See Carr v. Gerwitz,* No. 1:24-CV-1069 (AMN/DJS), 2024 WL
4712526 (N.D.N.Y. Sept. 20, 2024) (quoting *Ciambriello v. Cnty. of Nassau*, 292
F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity
acted in concert with a state actor does not suffice to state a § 1983 claim against
the private entity.").

## IV.    Opportunity to Amend

Generally, before the court dismisses a *pro se* complaint or any part of the
complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend
at least once; however, leave to re-plead may be denied where any amendment
would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.
1993). Futility is present when the problem with plaintiff's causes of action is
substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222
F.3d 99, 112 (2d Cir. 2000) (citation omitted).

While the Court is doubtful that Plaintiff can establish subject matter
jurisdiction, it is cognizant of the solicitude ordinarily granted to *pro se* plaintiffs
and will afford Plaintiff leave to amend to plead facts, if available and otherwise
true, that would establish the Court's jurisdiction over this matter. The Court
therefore recommends dismissing the complaint without prejudice and with leave
to amend.

If the District Court permits this action to proceed and Plaintiff amends her
pleading, she is reminded of her obligation under Fed. R. Civ. P. 8 which requires
that the amended pleading contain a short and plain statement showing that she is
entitled to relief. Further, if the District Court approves this report-recommendation
and allows Plaintiff to submit a proposed amended complaint, she should be
warned that any amended pleading must be a ***complete and separate pleading***.
Plaintiff must state all her claims in the new pleading and may not incorporate by
reference any part of her original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **DENIED WITHOUT PREJUDICE**, and it is further

**RECOMMENDED,** that the complaint be dismissed in its entirety, **WITHOUT PREJUDICE** and with leave to amend, and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, she should wait for the District Court to rule on the above Orders and Recommendations, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation along with a long-form *in forma pauperis* application form on Plaintiff by regular mail.[2]

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.[3]

Dated: May 28, 2025

_____

Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

[2] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

[3] *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 8 of 27

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]    On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

 **\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 9 of 27

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]    Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See., e.g.,* *Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3**  Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

**V. Analysis**

**A. Eleventh Amendment**

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 11 of 27

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 13 of 27

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

## C. First Amendment

### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

*7  It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.

Houston v. Coiferrian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988] (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]   The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at **4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race." *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at *9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Cofferian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer,* 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor,* 451 U.S. 527, 541 (1981)); *Davis v. New York,* 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson,* 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia,* a Court of Claims action." *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin,* 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]  The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach,* 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.,* 714 F.3d at 106; *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis,* 576 F.3d at 134; *Palmer,* 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer,* 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65; *see Davis,* 576 F.3d at 133.[10]

[10]  The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer,* 364 F.3d at 65-66; *see Davis,* 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Houston v. Coffer, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 16 of 27

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g.,* *Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 W L 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

**Houston v. Cofferman, Not Reported in Fed. Supp. (2016)**

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]      Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 5:25-cv-00645-LEK-MJK    Document 5    Filed 05/28/25    Page 18 of 27
**Houston v. Collerman, Not Reported in Fed. Supp. (2016)**

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4712526
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gerry CARR and Paulette Klein, Plaintiffs,
v.
Philip J. GERWITZ, et al., Defendants.

1:24-CV-1069 (AMN/DJS)
|
Signed September 20, 2024

**Attorneys and Law Firms**

GERRY CARR, Plaintiff, Pro Se, #18714, Albany County
Correctional Facility, 840 Albany Shaker Road, Albany, New
York 12211.

PAULETTE KLEIN, Plaintiff, Pro Se, Albany, New York
12212.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Plaintiffs commenced this action alleging a violation of
42 U.S.C. § 1983 against multiple Defendants. Dkt. No. 1,
Compl. The filing fee in this action has not been paid, but
Plaintiff Carr has filed a motion to proceed *in forma pauperis.*
Dkt. No. 2. The matter has been referred to the undersigned
for an initial review pursuant to L.R. 72.3.

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis*, "(2) ... the court shall dismiss
the case at any time if the court determines that – ... (B)
the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). [1] Thus, even if a plaintiff meets the
financial criteria to commence an action *in forma pauperis*, it
is the court's responsibility to determine whether the plaintiff
may properly maintain the complaint that he filed in this

District before the court may permit the plaintiff to proceed
with this action *in forma pauperis. See id.*

[1]     To determine whether an action is frivolous, a court
        must look to see whether the complaint "lacks an
        arguable basis either in law or in fact." *Neitzke v.
        Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of
a governmental entity" and must "identify cognizable claims
or dismiss the complaint, or any portion of the complaint,
if the complaint ... is frivolous, malicious, or fails to state a
claim upon which relief may be granted; or ... seeks monetary
relief from a defendant who is immune from such relief." 28
U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116
(2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636,
639 (2d Cir. 2007) (stating that both sections 1915 and 1915A
are available to evaluate *pro se* prisoner complaints). [2]

[2]     Review of Mr. Carr's claims is warranted under this
        section given that he indicates his is presently in
        custody in Albany County.

In reviewing a *pro se* complaint, the court has a duty to show
liberality toward *pro se* litigants, see *Nance v. Kelly*, 912 F.2d
605, 606 (2d Cir. 1990) (*per curiam*), and should exercise
"extreme caution ... in ordering sua sponte dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an
opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37,
41 (2d Cir. 1983) (internal citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that
a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions." *Id.*
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.*
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here
the well-pleaded facts do not permit the court to infer more

2024 WL 4712526

than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

The Complaint alleges that each Plaintiff individually lodged a complaint regarding the alleged theft of property by Defendants Daniel and Patricia Klein, the parents of Plaintiff Paulette Klein, in Colonie, New York. Compl. at pp. 3 & 4. Though not entirely clear, the Complaint then appears to allege that those reports were subsequently altered or falsified. *Id.* at p. 4. Plaintiffs allege that Defendants from the Colonie Police Department, the Klein Defendants, and a retired police officer from Schenectady then conspired to not fully investigate the matter. *Id.* at pp. 4-5.

The Complaint also alleges that Patricia Klein violated an order of protection by unlawfully tracking Plaintiff Klein's movements, with the assistance of other named Defendants. *Id.* at pp. 5-6.

### C. Analysis of the Complaint

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell*

*v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Under this standard, the Court recommends that the Complaint be dismissed, but with leave to amend. The precise nature of Plaintiffs' claims here is unclear. To the extent that Plaintiffs allege that the Defendant police officers failed to properly file or investigate the complaint filed by them, the Court notes that "there is no constitutional right to an adequate investigation." Thus, a police officer's failure to pursue a particular investigative path is not a constitutional violation." *Buari v. City of New York,* 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) (internal citations and alterations omitted).

Moreover, while the sole legal claim asserted is a purported violation of Plaintiffs' right to equal protection, the Complaint does not support such a claim at this time. "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Gentile v. Nulty,* 769 F. Supp. 2d 573, 577-78 (S.D.N.Y. 2011). The Complaint, however, contains no such allegation. For example, "[i]n order to state a claim under the Equal Protection Clause for selective enforcement of the law, plaintiffs must plead that (1) they were 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Butler v. City of Batavia,* 323 F. App'x 21, 22 (2d Cir. 2009) (quoting *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir. 2007)). No allegations of this sort are made here. At best, the Complaint makes entirely conclusory allegations of a conspiracy involving Defendant Weber seeking to protect Defendants Daniel and Patricia Klein from being investigated. Compl. at p. 5. "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983).

**\*3** The Complaint also fails to properly allege state action. Any claim under section 1983 requires state action. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d at 186) (internal quotations and alterations omitted). The Klein Defendants and Weber are not alleged to be governmental employees and so a basis for state action as to them is unclear. While a private person can be deemed a state actor if acting concert with a governmental employee, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Finally, the Court notes that neither Plaintiff has signed the Complaint. Federal Rule of Civil Procedure 11(a) provides: "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented." "The Supreme Court and the Second Circuit have applied this requirement strictly, and they have given no indication that it may be waived." *Grasso v. Donnelly-Schoffstall*, 2023 WL 4847313, at *5 (N.D.N.Y. July 28, 2023). Under Rule 11(a), an unsigned pleading must be stricken "unless the omission is promptly corrected after being called to the attorney's or party's attention." The Court, therefore, provides notice that any future filing permitted by the District Court in this action should be signed by all plaintiffs and the failure to comply may result in any deficient pleading being stricken.

For all of these reasons, the Court recommends that the Complaint be dismissed, but that Plaintiffs be afforded an opportunity to amend. The Court advises Plaintiff that should they be permitted to amend the Complaint, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiffs claims that their civil and/or constitutional rights were violated by

more than one defendant, or on more than one occasion, they should include a corresponding number of paragraphs in the amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiffs' civil and/or constitutional rights.

Plaintiffs are further cautioned that no portion of the prior Complaint shall be incorporated into the amended complaint by reference. Any amended complaint submitted by Plaintiffs must set forth all of the claims they intend to assert against the Defendants and must demonstrate that a case or controversy exists between the Plaintiffs and Defendants which Plaintiffs have a legal right to pursue and over which this Court has jurisdiction.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiffs' Complaint be **DISMISSED with leave to amend**; and it is

**\*4 ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period

**Carr v. Gerwitz, Slip Copy (2024)**
2024 WL 4712526

falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 4712526

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Carr v. Gerwitz 👓
   2024 WL 4712526 , N.D.N.Y. , Sep. 20, 2024

   *Report and Recommendation Adopted by*

2. Carr v. Gerwitz
   2024 WL 4456969 , N.D.N.Y. , Oct. 10, 2024

**Filings**

There are no Filings for this citation.